IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Edward J. Garabedian, )
    Plaintiff, )
  )
v. ) 1:08cv1221 (AJT/TRJ)
  )
Paul Lanteigne, et al., )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Edward J. Garabedian was a Virginia inmate proceeding pro se when he filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that defendants violated a number of his constitutional rights.[1] Defendants Holcomb (incorrectly sued as Holcum), Jamaludeen (incorrectly sued as Udeen), Hightower, and Kirven have each filed Motions for Summary Judgment. Plaintiff's complaint remains pending solely on Claims 2, 3, 4, 5, a portion of Claim 6, and 7. In Claim 2, plaintiff alleges that defendants Hightower, Holcomb, and Jamaludeen violated plaintiff's Eighth Amendment rights by housing plaintiff on a top bunk in spite of his back, leg, and shoulder problems. In Claim 3, plaintiff alleges that defendants Jamaludeen and Holcomb denied plaintiff the use of a cane, and plaintiff alleges in Claim 4 that defendant Jamaludeen refused to provide plaintiff with orthopedic shoes. In Claim 5, plaintiff states that defendant Hightower caused plaintiff to be housed in locations other than the bottom bunk four times in two years. Plaintiff alleges in the remaining portion of Claim 6 that defendant Kirven, who operated on plaintiff's shoulder, refused to treat plaintiff when he complained of pain post-surgery. In Claim 7, plaintiff states that defendants Jamaludeen and Holcomb refused to provide plaintiff with Oxycontin or to treat plaintiff's addiction to Oxycontin, which resulted in plaintiff

---

[1] On February 25, 2010, Garabedian submitted a notice of change of address, indicating that he has been released from custody.

developing a hiatal hernia. Garabedian was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). He has responded to the motions filed by Jamaludeen, Hightower, and Kirven, and has filed a "Motion for stay in Answering Summary Judgment in case of Beth Holcomb (defendant) or, request for extension of time to answer and for assistance in representation." For the reasons below, plaintiff's Motion will be dismissed and defendants' Motions for Summary Judgment will be granted.

## I. Plaintiff's Motion

In plaintiff's "Motion for stay in Answering Summary Judgment in case of Beth Holcomb (defendant) or, request for extension of time to answer and for assistance in representation," plaintiff requests appointment of counsel and a "stay in proceedings" or in the alternative, additional time to reply to Holcomb's Motion for Summary Judgment. Plaintiff states that his continuing medical problems hinder his ability to conduct legal research and to represent himself.

Plaintiff's multiple, repetitive motions throughout this litigation have bordered on abusive and have needlessly consumed judicial resources. To date, plaintiff has filed seven requests for additional time, including one other motion seeking additional time in responding to Holcomb's Motion for Summary Judgment. That request was denied, as plaintiff had previously been cautioned it would be, because plaintiff presented no exceptional circumstances. Likewise, as plaintiff has presented no exceptional circumstances in this instance, his most recent motion will be denied. Additionally, this is plaintiff's tenth request for the appointment of counsel. Plaintiff's most recent request was stricken from the record, as plaintiff had been cautioned it would be, and this request will be denied as well.

## II. Factual Background

The following material facts are uncontested. Plaintiff has been in and out of incarceration at the Virginia Beach Correctional Center ("VBCC") for the past twenty years, but the two incarcerative periods at issue in this litigation began in October of 2006 and December of 2007. Pl.'s Resp. to Hightower Mem. Supp. Summ. J. 1; Hightower Mem. Supp. Summ. J. Ex. A; Kirven Mem. Supp. Summ. J. Ex. A at 24. While at VBCC, plaintiff complained of multiple physical ailments, including back, shoulder, and leg pain. Jamaludeen Aff. ¶ 3; Kirven Aff. Ex. A at 18-20. Plaintiff underwent shoulder surgery performed by defendant Kirven on December 21, 2006. Kirven Mem. Supp. Summ. J. 5. Two weeks later, defendant Kirven reexamined plaintiff in a follow-up visit and determined that plaintiff was doing well. Kirven Aff. Ex. 1; Kirven Aff. ¶ 3. At that time, Kirven recommended against performing further operations on plaintiff due to plaintiff's failure to comply with post-operation instructions.[2] Kirven Aff. Ex. 1; Kirven Aff. ¶ 3. Kirven again examined plaintiff on April 30, 2007 and September 8, 2008, and patient complained of problems with his shoulder both times. Kirven Aff. ¶¶ 4, 5. Kirven examined plaintiff and discovered no problems that required further surgery, prescribing Motrin for plaintiff's discomfort. Kirven Aff. ¶ 5.

Additionally, plaintiff suffers from a hiatal hernia which he claims was caused by defendants Jamaludeen and Holcomb failing to properly treat plaintiff's opiate withdrawal symptoms. Jamaludeen Mem. Supp. Summ. J. 43; Jamaludeen Aff. ¶ 28. On October 12, 2008, plaintiff submitted a health services request form stating that he was "having trouble with his hiatal hernia." Jamaludeen Aff. ¶ 20. Two days later, defendant Jamaludeen saw plaintiff and

---

[2] Plaintiff disputes this, asserting that he complied with all instructions at all times, but he made this assertion in an unsworn statement which, as such, carries no evidentiary value. Pl.'s Resp. to Kirven Mem. Supp. Summ. J. 3.

directed plaintiff to continue taking a muscle relaxant. Jamaludeen Aff. ¶ 20. On October 20, 2008, plaintiff submitted another health services request form complaining of acid reflux, and when Jamaludeen saw plaintiff four days later, he prescribed medication to treat the reflux, which Jamaludeen indicates is a manifestation of plaintiff's hiatal hernia. Jamaludeen Aff. ¶¶ 20, 28. While plaintiff was treated by Jamaludeen several times for gastrointestinal problems, Jamaludeen and Holcomb aver that plaintiff never presented to medical complaining of symptoms of opiate withdrawal.[3] Jamaludeen Aff. ¶ 28; Holcomb Aff. ¶ 17. Jamaludeen also states that the jail's policy is to not dispense narcotics to inmates. Jamaludeen Aff. ¶ 29.

At various times during plaintiff's incarceration, he was assigned to a top bunk. Hightower Mem. Supp. Summ. J. 1. During these times, plaintiff submitted grievances requesting to be moved to a bottom bunk, and the exhibits submitted by plaintiff and defendants demonstrate that plaintiff was moved to a bottom bunk within several days at the most. Pl.'s Jan. 25, 2008 Grievance; Pl.'s July 24, 2008 Grievance; Hightower Mem. Supp. Summ. J. Ex. A. Also at various times during plaintiff's incarceration, he was assigned to sleep on the floor of a jail cell. Hightower Mem. Supp. Summ. J. 1. On August 5, 2008, defendant Holcomb directed that plaintiff be assigned only to a bottom bunk due to his medical problems. Hightower Mem. Supp. Summ. J. Ex. H. After that, jail records dating until plaintiff left VBCC in January of 2009 reflect that plaintiff was housed on the floor once for several hours during the afternoon of October 6, 2008, when he was relocated due to an enemy in his cell block. Hightower Mem. Supp. Summ. J. Ex. A. Holcomb avers that she was unaware that plaintiff required a bottom bunk placement until plaintiff raised the issue with medical staff and that she then assigned

---

[3] Plaintiff disputes this assertion, arguing that plaintiff informed Jamaludeen of his addiction to opiates upon arrival at VBCC. Pl.'s Resp. to Jamaludeen M. for Summ. J. 13. As previously stated, plaintiff did not make these assertions in a sworn statement, and thus they are of no evidentiary value.

4

plaintiff to a bottom bunk. Holcomb Aff. ¶ 15. Defendant Jamaludeen states that plaintiff was moved to a bottom bunk as soon as he first requested a move. Jamaludeen Aff. ¶ 26.

On August 12, 2008, plaintiff filed a health services request form requesting to be issued a cane. Dr. Jamaludeen informed plaintiff during a visit four days later that canes are only provided to inmates in limited circumstances because they could be used as weapons and that in any event, plaintiff did not need a cane. Jamaludeen Aff. ¶¶ 27, 42. Also on August 12, 2008, plaintiff requested orthopedic shoes to help with his medical problems, including a two-inch shortness in one leg. Dr. Jamaludeen informed plaintiff during the August 16 visit that he would not prescribe plaintiff orthopedic shoes because VBCC did not have the shoes on site, however plaintiff could pay for the shoes himself or have someone bring them to the center. Jamaludeen Aff. ¶ 41.

Plaintiff has filed multiple written documents challenging defendants' versions of the facts. Contrary to the express instructions set forth in three of the defendants' notices pursuant to Local Rule 7(K) and the requirements of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), plaintiff has failed in all but one instance to submit "affidavits (written statements signed before a notary public and under oath) or . . . sworn statements (bearing a certificate that it is signed under penalty of perjury)." (Docket ## 63, 75, 79). Because plaintiff's opposition to defendant Hightower's motion for summary judgment was properly sworn under penalty of perjury, it carries evidentiary value, but his written responses to Kirven and Jamaludeen's motions for summary judgment were not properly sworn and thus carry no evidentiary value.

### III. Exhaustion

Plaintiff and defendants dispute whether plaintiff properly exhausted his administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison

conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See Woodford v. Ngo, 548 U.S. 81, 92 (2006) (requiring complete exhaustion of correctional facility administrative remedies). In order to bring this action in the federal courts, plaintiff must receive a response to his grievance and, if unsatisfactory, must pursue it through all available levels of appeal before presenting that claim in federal court.

In this case, plaintiff has submitted nearly two hundred pages of exhibits and grievance reports regarding his perceived mistreatment at VBCC, and he indicates that still more grievances could be produced through discovery. Despite plaintiff's voluminous filings, it remains unclear which complaints were grieved, when the grievances were filed, and which grievances were properly appealed. Under the circumstances, it would not be an efficient use of judicial resources to determine with certainty whether all of plaintiff's grievances were properly filed and appealed through the institution's grievance process, because plaintiff's claims clearly lack merit. Therefore, they will be addressed on the merits.

### IV. Standard of Review

In reviewing defendants' Motions for Summary Judgment, the Court must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is properly made and supported . . ., an opposing party may not

rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson, 477 U.S. at 247-48) (internal quotation marks omitted). Accordingly, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

## V. Analysis

Summary judgment in favor of defendants Kirven, Hightower, Jamaludeen, and Holcomb is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that defendants did not violate plaintiff's Eighth Amendment rights.

### A.  Denial of Reasonable Medical Treatment

It is well-settled that prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To have such a claim rise to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. Thus, plaintiff must first demonstrate a sufficiently serious medical need. See, e.g., Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating

pain" of an untreated broken arm is sufficiently serious). Second, plaintiff must show deliberate indifference to that serious medical need; mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. Additionally, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

1. Claim 3

In Claim 3, plaintiff alleges that defendants Jamaludeen and Holcomb refused to provide plaintiff with a cane. As defendants' affidavits demonstrate, Jamaludeen exercised his medical judgment in determining that plaintiff did not need a cane, and Holcomb lacked the authority to issue a cane to a prisoner. Even if plaintiff's unsworn responses were to be taken as true,[4] they would still fall short of creating a genuine issue of material fact. The record indicates that Jamaludeen was well aware of plaintiff's medical condition and decided that a cane was unnecessary. Thus, as plaintiff merely disagrees with Jamaludeen's medical judgment and as Holcomb could not have issued a cane to plaintiff, no violation of plaintiff's right to reasonable medical care occurred. Wright, 766 F.2d at 849.

---

[4] Plaintiff states that walking distances without a cane hurts him and that if defendants were concerned about plaintiff using the cane as a weapon, they could have transferred him to a medical block. Pl.'s Resp. to Jamaludeen's Answer 7.

8

2. Claim 4

Plaintiff raises a similar complaint in Claim 4, in which he argues that defendant Jamaludeen refused to provide plaintiff with orthopedic shoes. According to plaintiff, Jamaludeen stated that plaintiff could have shoes sent to him, but that per jail policy, the institution does not have the shoes on site, would not pay for the shoes, and would not permit plaintiff to leave VBCC to buy the shoes. Plaintiff states that he needs the shoes because one leg is two inches shorter than the other. Plaintiff has not presented facts indicating that a shortness in one leg constitutes a serious medical need. See Haverty v. Crosby, 2006 WL 839157 (N.D. Fla. March 28, 2006), at *5 (finding that a three-quarters inch shortness in one leg did not constitute a serious medical need). Plaintiff states in an unsworn statement[5] that the shortness in his leg caused problems with his back, hip, and knee, and that without orthopedic shoes walking is difficult. However, plaintiff has not presented evidence showing that his problems are akin to the excruciating pain of an untreated broken arm. See Loe, 582 F.2d at 1296. Moreover, even if the shortness did constitute a serious medical need, plaintiff has not shown that Jamaludeen was deliberately indifferent to that medical need. The record shows that Jamaludeen provided plaintiff with two options for securing the shoes plaintiff claims he needs, and plaintiff found neither option agreeable. Even if plaintiff's unsworn statements were taken as fact, there is no evidence that plaintiff's shortness in one leg is a sufficiently serious medical need to support an Eighth Amendment claim, and even if it is, there is no evidence that Jamaludeen acted with deliberate indifference to that medical need. Therefore, Claim 4 must be dismissed.

3. Portion of Claim 6

In the remaining portion of Claim 6, plaintiff alleges that defendant Kirven violated plaintiff's right to reasonable medical care when Kirven refused to "fix" plaintiff's shoulder by

---

[5] Pl.'s Resp. to Jamaludeen's Answer 8.

operating on it again after Kirven had operated on it once. Plaintiff states that he was in pain and that pins in his clavicle were insecure following the surgery. Defendant Kirven avers that he examined plaintiff several times after surgery and determined that the injury was healing well and that further surgery would not be beneficial because plaintiff did not comply with his treatment plan, fought other inmates, and did not immobilize his arm in a sling at all times. Kirven Mem. Supp. Summ. J. 3.

In his unsworn filings, plaintiff disputes several of Kirven's statements. Specifically, plaintiff alleges that he always kept the sling on and never had any altercation with anyone at the jail. Pl.'s Resp. to Kirven Mem. Supp. Summ. J. 3, 7. Additionally, plaintiff disputes Kirven's assertions that the "hardware" in plaintiff's shoulder was intact following surgery, but he provides no facts in support of his conclusory statement. He also alleges that Kirven erred during the surgery by not properly securing the screws in his shoulder and disputes Kirven's assertion that his clavicle was healing. Pl.'s Resp. to Kirven Mem. Supp. Summ. J. 5, 7. Even considering these unsworn statements as facts, these disagreements do not concern material facts because they establish, at the absolute most, negligence. Assuming without deciding that plaintiff's condition rises to the level of a serious medical need, and viewing the facts in the light most favorable to plaintiff, Kirven was not deliberately indifferent to plaintiff's medical needs. Specifically, Kirven examined plaintiff several times following surgery, performed X-rays, advised plaintiff to immobilize his arm, and recommended Motrin for plaintiff's discomfort. Kirven Mem. Supp. Summ. J. 3. Plaintiff's complaints regarding his care under Kirven show that plaintiff disagrees with Kirven's medical decisions and, under the most favorable reading to plaintiff, demonstrate negligence that can only be brought under a state law cause of action, not

pursuant to § 1983. Thus, the remaining portion of Claim 6 does not state a claim of denial of reasonable medical care.

4. Claim 7

In Claim 7, plaintiff alleges that his Eighth Amendment rights were violated when defendants Jamaludeen and Holcomb refused to prescribe plaintiff Oxycontin, which plaintiff states he needs not only to alleviate the pain resulting from his medical problems, but also because he had become addicted to the drug before entering VBCC. Plaintiff states that this refusal caused him to experience opiate withdrawal symptoms, which in turn resulted in plaintiff developing a hiatal hernia. The record reflects that Jamaludeen treated plaintiff's hiatal hernia with acid reflux medication.

The record and exhibits demonstrate that there is no genuine issue of material fact regarding plaintiff's claim. Holcomb avers that she had no authority to prescribe drugs to inmates, and plaintiff's complaint suggests nothing to the contrary. Regarding plaintiff's claim against defendant Jamaludeen, plaintiff and Jamaludeen dispute several facts. Taking plaintiff's unsworn statement as true, plaintiff states that Jamaludeen knew of plaintiff's opiate addiction upon his arrival at VBCC because plaintiff participated in an "intake screening process" during which he indicated that he suffered from the addition. Pl.'s Resp. to Jamaludeen Mem. Supp. Summ. J. 14. Additionally, plaintiff states that he did file grievances pertaining to his multiple requests for Oxycontin, however plaintiff does not indicate that he complained of withdrawal symptoms in those grievances. Instead, he describes the complaints listed in the grievances as pertaining to the ineffectiveness of his prescribed pain medication on his shoulder and back pain. Jamaludeen states that plaintiff never submitted a standard medical grievance pertaining to his

withdrawal symptoms, and that Jamaludeen therefore was unaware of plaintiff's addiction. Jamaludeen Mem. Supp. Summ. J. 12, 14.[6]

As a preliminary matter, taking plaintiff's unsworn statements as true, plaintiff has not stated that he informed the doctor that he was suffering from withdrawal symptoms. According to plaintiff, plaintiff told Jamaludeen at the beginning of the incarceration at issue that plaintiff was "addicted" to Oxycontin, that he had an Oxycontin prescription on his person when he was arrested, and that a particular Wal-Mart had filled plaintiff's Oxycontin prescriptions for five years. P's Resp. to Jamaludeen Mem. Supp. Summ. J. 13. Although plaintiff does state that during previous incarcerations he informed Jamaludeen of withdrawal symptoms he then experienced, plaintiff has not stated that he informed Jamaludeen of any withdrawal symptoms during the incarceration period at issue, only that his need for opiates "and or a treatment for withdrawal" was "obvious." P's Resp. to Jamaludeen Mem. Supp. Summ. J. 13, 14. Thus, there is no genuine issue of material fact related to this issue.

Even if plaintiff had informed Jamaludeen of withdrawal symptoms, plaintiff and Jamaludeen's disagreements regarding the propriety of Jamaludeen's treatment are not material, because plaintiff's injury does not rise to the level of a "serious medical need" sufficient to state a claim under § 1983. A serious medical need either is a "condition of urgency, one that may produce death, degeneration, or extreme pain," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994), or arises if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998) (internal citation omitted). Here, plaintiff alleges that untreated opiate withdrawal symptoms led to the hiatal hernia. According to plaintiff, the hernia results in acid

---

[6] Jamaludeen also notes that he did treat plaintiff's haital hernia. Jamaludeen Mem. Supp. Summ. J. 14-15.

12

reflux and regurgitation, and plaintiff has presented no facts suggesting that such a condition could lead to death, degeneration or extreme pain. Furthermore, the record indicates that Jamaludeen treated plaintiff with medications to reduce acid reflux and that the jail's policy is to not prescribe narcotics to prisoners. Thus, plaintiff's hiatal hernia fails to constitute a serious medical need, and even assuming that Jamaludeen was aware of his withdrawal symptoms, Jamaludeen did not violate plaintiff's Eighth Amendment right to reasonable medical care.

**B.     Cruel and Unusual Jail Conditions**

1. Claim 2

In Claim 2, plaintiff alleges that defendants Holcomb, Hightower,[7] and Jamaludeen violated plaintiff's Eighth Amendment rights by occasionally housing him on a top bunk instead of a bottom bunk. Taking the facts asserted in plaintiff's unsworn amended complaint as true, plaintiff cites his medical problems in support of his argument that he should be housed on a bottom bunk at all times, and he notes that he fell one time "between the Sept – Oct part of my incarceration of 2006" when he tried to enter the top bunk, injuring his shoulder. Am. Compl. 4. He alleges that he first notified the institution that he requires a bottom bunk assignment during the first few weeks of his incarceration.

In order to make out a case that prison conditions violate the Eighth Amendment, a plaintiff must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991). The first showing requires a court to determine whether the deprivation of the basic human need was objectively "sufficiently serious," and the second requires it to determine whether subjectively "the officials act[ed] with a sufficiently culpable state of mind."

---

[7] Plaintiff's claims against defendant Hightower in Claim 2 are similar to his claims against Hightower in Claim 5, where he discusses his assignment to the floor in some instances. Thus, both claims against Hightower will be addressed in Claim 5.

Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991); see also Hudson v. McMillian, 503 U.S. 1, 6, 112 S.Ct. 995, 999 (1992).

As a preliminary matter, it appears that the fall plaintiff suffered occurred outside the two year statute of limitations required for § 1983 complaints and is thus not actionable here.[8] However, assuming without deciding that plaintiff's claim is timely, and assuming without deciding that the injury plaintiff sustained after falling from the top bunk was sufficiently serious to warrant constitutional protection, plaintiff has shown no deliberate indifference on the part of any defendant. He admits that his shoulder was X-rayed following his fall, so plaintiff's injury was treated, even though plaintiff may disagree with the method of treatment. Am. Compl. 4. Furthermore, plaintiff has presented no evidence indicating that his assignments to a top bunk were the result of deliberate indifference on the part of defendants. Finally, although plaintiff disputes the date he first alerted defendants to his bunk preference, even adopting plaintiff's version of the facts, he has not shown that defendants were deliberately indifferent. Thus, summary judgment in defendants' favor is appropriate.

2. Claim 5

In Claim 5, plaintiff alleges that his constitutional rights were violated when defendant Hightower assigned plaintiff to be housed on the floor and a top bunk instead of the bottom bunk four times during two years.[9] Plaintiff states that his clavicle, hip, and shoulder problems are

---

[8] There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Virginia has a two-year statute of limitations for personal injury claims under Virginia Code. § 8.01-243(A), which is the applicable statute of limitations in this action. See Shelton v. Angelone, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001), aff'd, 49 Fed. Appx. 451 (4th Cir. Oct. 30, 2002) (unpublished opinion).

[9] In plaintiff's only sworn statement, plaintiff disputes Hightower's recollection of the number of nights he was assigned to sleep on the floor; plaintiff also indicates that he voluntarily slept on

exacerbated when he sleeps on the floor, resulting in pain and discomfort. He also alleges that he "suffered mentally" as a result of having to sleep on the floor. Hightower avers that plaintiff was assigned to the floor "at various times . . . and for short intervals." Hightower Mem. Supp. Summ. J. 1. Plaintiff and defendant Hightower dispute several facts,[10] but none of the disputes concern facts that could affect the outcome of the case.

Here, while plaintiff and defendant Hightower may dispute the number of times plaintiff slept on the floor, it appears clear that most of the time, plaintiff was housed in a bottom bunk, and most of the times he requested to be moved to a bottom bunk, his requests were granted. The times plaintiff spent sleeping on the floor were intermittent and reflect no deliberate indifference on the part of Hightower.[11] Furthermore, plaintiff has failed to show that he has suffered any serious or significant physical or emotional injury as a result of his time spent sleeping on the floor. While plaintiff may have felt a degree of pain and discomfort while sleeping in locations other than the bottom bunk, "[t]he Constitution, 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Seiter, 501 U.S. at 298 (citing Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). It should also be noted that plaintiff himself indicated in a grievance form that he had been "getting along well" on the floor at one point. Hightower Mem. Supp. Summ. J. Ex. E. Furthermore, there is no evidence that plaintiff

---

the floor several nights when he was assigned to a top bunk. Pl.'s Resp. to Hightower Mem. Supp. Summ. J. 3.

[10] Specifically, the parties dispute the number of times plaintiff was assigned to the floor, the dates of those assignments, when and whether plaintiff filed grievances regarding his sleeping assignments, and when plaintiff first requested to be moved to a bottom bunk.

[11] Plaintiff was moved relatively frequently, for reasons such as an "enemy in his block" and segregation following an incident in which plaintiff was caught with a shank. Hightower Mem. Supp. Summ. J. Ex. A, J.

15

suffered a serious deprivation of a basic human need during these intermittent incidents. See Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993) ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment."). Thus, plaintiff's Eighth Amendment rights have not been violated.

## VI. Conclusion

For the reasons stated above, defendants' Motions for Summary Judgment will be granted. An appropriate order shall issue.

Entered this 3rd day of March 2010.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge